*355 OPINION.
Littleton:
If Commissioner David H. Blair had authority to make a determination in respect of the tax of the petitioner for the periods in question and was correct in determining that the taxpayer, a New York corporation, acquired the business and assets of Younker Brothers, Inc., an Iowa corporation, through a change in ownership subsequent to March 3, 1917, and that the provisions of section 208 of the Revenue Act of 1917 and section 331 of the Revenue Act of 1918 were applicable in the determination of the invested capital, it becomes unnecessary to pass upon the claims advanced by the petitioner as to the actual value of the tangible and intangible assets acquired by it in 1917. We think little discussion is necessary to show that in the circumstances disclosed by the facts in this proceeding Commissioner Blair was not precluded from considering the matter of the tax liability of petitioner and its affiliated corporations *356 for the periods involved. The petitioner’s objection to the Commissioner’s authority to consider the matter of its tax liability can relate only to the period March 19, 1917, to December 81, 1917, and for the month of January, 1918, since this is the only period in respect of which the petitioner claims the present Commissioner’s predecessor made a determination. The petitioner’s objection is predicated entirely upon the letter to Younker Brothers, Inc., dated December 21, 1920, at which time William M. Williams was the Commissioner of Internal Revenue. There is no evidence in the record other than the income-tax return, Form 1031, and the excess-profits-tax return, Form 1103, filed by Younker Brothers, Inc., on or about March 27, 1918, as to what facts or information were before the then Commissioner for forming the basis of his conclusion indicated in the letter of December 21, 1920.
There has been no showing that the true facts -and circumstances relating to the reorganization of the Iowa corporation and the change of ownership of the property and business of that corporation to the new corporation upon which Commissioner Blair acted were known to Commissioner Williams and upon this failure of evidence alone we would have to decide that Commissioner Blair was not precluded by law in making a determination in respect of the tax liability. In addition to this, there is no suggestion that the facts relating to the relationship of the five other corporations with Younker Brothers, Inc., were known to the Commissioner’s predecessor in office, and the statements contained in the income and profits-tax returns filed by the petitioner do not evidence this fact. These returns stated that ./the New York corporation was incorporated and organized on January 15, 1917, that the good will claimed by it was acquired for stock on January 15, 1917, that the business was not reorganized or sold, or its ownership changed after March 3, 1917, and that the petitioner was not affiliated with any other corporation. In answer to question 3 on page 4 of the original excess-profits-tax return, the petitioner, in answer to the question “ Under the laws of what State or country [it was incorporated] ?” answered “ New York, Charter filed March 19, 1917,” and it nqw claims that this statement upon the return precludes the present Commissioner from modifying the determination of his predecessor. Even if there might be a case where a Commissioner might be precluded from modifying his predecessor’s determination, or determining a further additional tax within the statutory periods of limitation for years for which the predecessor in office had audited returns, we think the facts in this record are far from presenting such a case. Cf. Dallas Brass & Copper Co., 3 B. T. A. 856; Warner Sugar Refining Co., 4 B. T. A. 5; Boyne City Lumber Co., 7 B. T. A. 36. Compare also, Carter Music Co. v. Bass, 20 Fed. (2d) 390, wherein the United States District Court for the Southern District of Texas, *357 held in opinion rendered June 15, 1927, in an action by the taxpayer to recover taxes paid in respect of which the taxpayer and the Commissioner of Internal Revenue had entered into an agreement in respect of the tax liability under and pursuant to section 1312 of the Revenue Act of 1921, which agreement was approved by the Secretary of the Treasury, that the taxpayer was, notwithstanding such agreement, entitled to recover a portion of the tax paid. We have held that the Commissioner is not precluded from reviewing and reversing his predecessor’s decision as to a question of law. Yokohama Ki-Ito Kwaisha, Ltd., 5 B. T. A. 1248. And that a predecessor’s determination of a question of fact is not binding upon his successor for a following year. Boyne City Lumber Co., 7 B. T. A. 36. There has been no showing in this proceeding that Commissioner Blair’s determination which is complained of was not the result of a reopening of the case by Commissioner Williams after his letter of December 21,1920. See Nazareth Cement Co., 4 B. T. A. 1121. We are of the opinion that the claim that Commissioner Blair was without legal authority to make a determination in respect of the tax liability of petitioner and its affiliated corporations for the taxable periods involved is without merit.
We think the facts hereinbefore set forth conclusively show that the Commissioner was correct in holding that the provisions of section 208 of the Revenue Act of 1917 and section 331 of the Revenue Act of 1918 were applicable in the determination of the invested capital of the petitioner for the taxable periods involved. It is contended upon behalf of the petitioner that for all intents and purposes the New York corporation acquired the business and property of the Iowa corporation on January 15, 1917, and that since this was prior to March 3, 1917, the provisions of the above-mentioned sections do not apply; that if it should be held that the business and properties were acquired by the New York corporation subsequent to March 3, 1917, it acquired such assets from an association composed of the former stockholders and employees of the Iowa corporation, which association was the result of a reorganization on January 15, 1917, and the actual value of the tangible and intangible assets acquired by this association from the Iowa corporation on January 15, 1917, should be used in determining this petitioner’s invested capital. Section 208 of the Revenue Act of 1917 provides — .
That in case of the reorganization, consolidation or change of ownership of a trade or business after March third, nineteen hundred and seventeen, if an interest or control in such trade or business of fifty per centum or more remains in control of the same persons, corporations, associations, partnerships, or any of them, then in ascertaining the invested capital of the trade or business no asset transferred or received from the prior trade or business shall be allowed a greater value than would have been allowed under this title in computing the invested capital of such prior trade or business if such asset had not been so *358 transferred or received, unless such asset was paid for specifically as such, in cash or tangible property, and then not to exceed the actual cash or actual cash value of the tangible property paid therefor at the time of such payment
Section 331 of the Revenue Act of 1918 provides—
In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: Provided, That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation.
A corporation is a taxable entity and, until it comes into existence, it can not acquire or own property, and no one else can bold property in sucb a way as to make the acquisition or ownership by the corporation, for the purposes of computing invested capital under the taxing acts, antedate the corporate existence. Furthermore, there is no showing in this proceeding that any one other than the Iowa corporation ever held or owned the business or assets of that corporation prior to March 19, 1917, when the New York corporation was created and organized, as was stated in paragraph 2 of its charter “To acquire and take over, as a going concern, the general merchandise business now carried on at Des Moines, Iowa, by Younker Brothers, Inc., and all or any of the assets or liabilities of that business.” This provision of the charter also negatives the fact that there was ever any intermediate joint stock association which owned the assets of the Iowa corporation. The Iowa corporation was not dissolved prior to the acquisition of its assets by the New York corporation, it never parted with title to or possession of its assets. Its capital stock, which was owned by the six individuals hereinbefore mentioned, was never surrendered to it or canceled. .So far as the evidence shows there was never any distribution by the Iowa corporation of any of its assets in liquidation. The interim certificates which were issued by the Iowa corporation’s stockholders to themselves and others evidence nothing more than the right of the holders thereof to receive so many preferred and common shares “ of a New York corporation to be organized under the laws of New York, if, as and when issued.” The stock of the Iowa corporation, upon the basis of which the interim certificates were issued to the stockholders of record and to employees for whom such stockholders had set aside a portion of their stock, was at all *359 times held by their attorney. The interim certificates were not stock in any corporation, they gave the holders no title to any of the assets of the Iowa corporation on their own account or for the benefit of anyone else; they evidenced nothing more than an agreement and understanding between the stockholders of the Iowa corporation. No one could have Successfully reached the assets of the Iowa corporation by proceeding against the holders of the interim certificates, nor could an action have been successfully maintained by or against the New York corporation in respect thereof prior to March 19, 1917, the date of its creation. The assets in question belonged to the Iowa corporation until there was a change of ownership and acquisition thereof by the New York corporation on or after March 19, 1917. The “Plan and Agreement for Reorganization ” of the Iowa corporation did not operate to divest the Iowa corporation of title to any of its assets. The corporation was not a party to the agreement and the language of the whole agreement of January 15, 1917, shows merely that it was an arrangement by the stockholders of the Iowa corporation to organize at some future time a new corporation to acquire and take over the business and assets of the Iowa corporation. The closing of the books of the Iowa corporation and the opening of new books in the name of Younker Brothers, Inc., a New York corporation, on January 15, 1917, was merely “for the purposes of accounting” and could not affect the change of ownership of the property and business of the Iowa corporation for the purpose of computing invested capital under the Revenue Acts. The Iowa corporation was taxable upon the earnings of the business of March 19, 1917, irrespective of the fact that on the latter date the New York corporation took over its property and business as of January 15, 1917. See Peter W. Rouss, 4 B. T. A. 516; Henry F. McCreery, 4 B. T. A. 967.
Petitioner cites and relies upon the decision of the Board in the Appeal of Manville Jenckes Co., 4 B. T. A. 765, wherein it was held, that cash paid into a corporation by its stockholders with the definite understanding that such money should be at the risk of the business and that stock would subsequently, when authorized, be issued therefor, and for which the corporation in the meantime gave notes, constituted invested capital from the date paid in, but that decision is not authority under the facts in this proceeding for the claim either that there was an association which acquired the assets of the Iowa corporation, or that the New York corporation acquired such assets prior to March 3, 1917.
It is not disputed that ownership of more than 50 per cent of the stock of the New York corporation remained in the stockholders of the Iowa corporation. We affirm the Commissioner’s determination that under section 208 of the Revenue Act of 1917 and section 331 of *360 the Revenue Act of 1918 the petitioner, a New York corporation, can not include in invested capital for the taxable periods in question any of the assets acquired from the Iowa corporation at a greater value than could have been allowed in respect thereof in computing the invested capital of the Iowa corporation.
We are of the opinion that the Commissioner was in error in excluding the amount of $97,000 in computing the invested capital of Younker Realty Co. and the amount of $45,000 in computing the invested capital of Younker Building Co. for the taxable periods involved. These amounts represented cash bona fide paid in for stock of these corporations. The stockholders of Younker Brothers, Inc., desired to obtain leases upon certain valuable property for use in expanding the business of Younker Brothers, Inc. In order to obtain such leases it was necessary to organize the two corporations mentioned with a paid-in capital stock of $100,000 and $50,000, respectively. These corporations loaned a portion of the paid-in capital to its four stockholders without interest. This was not a distribution by the corporations in partial liquidation. The stockholders were personally liable at all times for the return of the amounts borrowed. They were at all times solvent and fully able to pay the amounts upon demand.
The action of the Commissioner in reducing invested capital for the taxable periods on account of the tax on the income for the preceding years is approved. Section 1207 of the Revenue Act of 1926; Russel Wheel & Foundry Co., 3 B. T. A. 1168.
Reviewed by the Board.
Judgment will be entered on 15 days’ notice, under Rule 50.
Aeundell and Milliken did not participate.